**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Clarence Shedd, | | |
| | Plaintiff, | 08 CV 1913 |
| vs. | | Judge Gettleman |
| | | Magistrate Judge Cox |
| 1550 N. Lakeshore Condo Association, | | |
| Richard Condon, | | |
| Ruby Levy, | | JURY TRIAL DEMANDED |
| Janet Hope, | | |
| Thomas Engblom and | | |
| Fari Harandi | | |
| | Defendants. | |

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Now come the Defendants, 1550 Lake Shore Condominium Association and Janet Hope, through their attorneys, Mark Roth and Beata Bukranova of Orum & Roth, LLC, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, request that this Court dismiss Plaintiff's Complaint with prejudice. In support, Defendants state as follows:

**I.**
**INTRODUCTION**

Plaintiff has filed a single-count complaint. Plaintiff's Complaint alleges a claim of discrimination based on race and retaliation. As a prerequisite to maintaining the lawsuit, Plaintiff's complaint alleges that he filed a charge of discrimination with the City of Chicago Commission on Human Relations in 2001 and 2003. As will be shown in this Motion, the City of Chicago dismissed the allegations raised in those charges filed in 2001 and 2003, and the City entered an Order Finding No Substantial Evidence.

The Charges filed with the City of Chicago did not reference the actions alleged in the instant complaint, nor could they.  Plaintiff's current lawsuit alleges an action that took place in July 2004, almost one year after the Plaintiff filed his last charge.  Plaintiff has never filed an EEOC charge or any other administrative charge with respect to the allegations contained in the Complaint. Therefore, Plaintiff has not fulfilled a prerequisite to maintaining the instant federal court lawsuit, as Plaintiff has failed to file an EEOC charge related to the issues raised in this case.

## II.
## STATEMENT OF FACTS

Plaintiff has filed a single-count complaint, a copy of which is attached as Exhibit "A."  Plaintiff's Complaint alleges that he was an employee of the condominium association defendant, 1550 Lake Shore Condominium Association.  According to Plaintiff's Complaint, on July 27, 2004, Plaintiff was called into a meeting with several members of the Association's Board of Directors and Ms. Hope. Ms. Hope asked Plaintiff why she could not park her car on the first floor. Plaintiff responded that it was the policy of the Association that no employee was to park on the first floor.  The Association's President stated that Ms. Hope was not an employee of the Association. Plaintiff's Complaint alleges that an unnamed employee of the Association's management company then asked Plaintiff for a copy of his compensation agreement with the Association.  The Plaintiff stated that his compensation agreement with the Association was not in writing.  The unnamed property management employee said that if Plaintiff's compensation agreement was not in writing then it was not enforceable.  Ms. Hope stated that it would be impossible for the two of them to work together.  According to the Complaint: "Feeling attacked and sensing that his termination was imminent, Mr.

Shedd rose from his chair and walked out of the office and out of the building." Plaintiff's complaint does not allege that he was terminated, nor in good faith may Plaintiff make that allegation. Paragraph 20 then alleges that based on these actions the Association violated "Racial discrimination and Retaliation, 42 USC Sec 1981 Equal Rights under the law."

Paragraph 6 of the Complaint alleges that Plaintiff filed a Charge of Discrimination with the City of Chicago Commission on Human Relations on June 19, 2001. Paragraph 7 of Plaintiff's Complaint alleges that he filed a charge of retaliation with the City of Chicago Commission on November 19, 2003. Paragraph 8 of Plaintiff's complaint alleges that these charges "satisfied all conditions prerequisite to filing this action."

## III.
## ARGUMENT

<u>Plaintiff Has Not Filed A Charge Of Discrimination With The EEOC Related To The Acts Alleged In The Complaint, And The Time To File Such A Charge Expired In May 2005. Plaintiff's Complaint Should Accordingly Be Dismissed.</u>

Plaintiff alleges that the two charges of discrimination that he filed with the City of Chicago in 2001 and 2003 somehow provide the predicate basis for filing the instant lawsuit based on allegations that occurred in July 2004, more than a year after the last charge was filed with the City. Attached to this Motion are copies of the Charges of Discrimination referenced in the Complaint and the City of Chicago's Order finding no evidence to proceed on the Charges. A defendant may properly attach copies of documents to a motion to dismiss that are referenced in the complaint and central to the claim. *Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727 (7th Cir. 2005).

Attached hereto as Exhibit "B" is the Affidavit of Defendants' attorney verifying the authenticity of the Charges of Discrimination and the City of Chicago's final order on those charges. Plaintiff's First Charge of Discrimination was with the City of Chicago on June 14, 2001 under charge number 01-E-69. Exhibit "C." Plaintiff then filed an amended charge on November 19, 2003 under that same case number. Exhibit "D." The City of Chicago entered an Order Finding No Substantial Evidence on both charges on August 18, 2005. Exhibit "E."

The first charge relates to the Plaintiff's claim that on May 15, 2001 a unit owner in the condominium building swore at the Plaintiff and threatened to have him fired. The 2003 charge alleges that the then-President of the Board asked the property manager when he intended to fire the Plaintiff. The City of Chicago Commission on Human Relations entered on August 18, 2005 that detailed the Commission's comprehensive review of the allegations, and the evidence to support those allegations. The Commission's order found that there was no substantial evidence to support the Plaintiff's charges.

Plaintiff has never filed a charge with respect to the allegations contained in the instant complaint.

In order to maintain a federal court lawsuit alleging discrimination under Title VII, a plaintiff must first file a charge of employment discrimination with the EEOC. 42 USC Sec. 2000e-5(e) provides that a charge of employment discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice. *EEOC v. Harvey L. Walner & Assoc.*, 91 F.3d 963, 970 (7th Cir. 1996). If an employee does not file a charge of discrimination within 300 days of the occurrence of the discriminatory

4

conduct the claim is time barred.  See *e.g., Rooney v. IDOT*, 474 F. 3d 455 (7th Cir. 2007).

In the present case, Plaintiff's Complaint alleges that he believed he would be terminated and he quit his job on July 27, 2004.  Therefore, assuming a discriminatory act took place on that date, then the Plaintiff had 300 days from that date, or until May 24, 2005, to file a charge of discrimination based on the actions that are the subject of this lawsuit.  Plaintiff has never, however, filed an EEOC charge related to the instant allegations. Filing an EEOC charge is a prerequisite to maintaining their federal court lawsuit.  *Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 128-29* (7th Cir. 1989).

Plaintiff's complaint should accordingly be dismissed with prejudice. Plaintiff has failed to file an appropriate EEOC charge of discrimination. Further, the time to file that charge has long since passed.

WHEREFORE, the Defendants, 1550 Lake Shore Condominium Association and Janet Hope, request that this Court dismiss Plaintiff's lawsuit with prejudice, and for such other and further relief as this Court deems just.

Respectfully submitted,

/s/ Mark D. Roth
Attorney for 1550 Lakeshore
Condo Assn. and Janet Hope

Mark D. Roth
Beata Bukranova
ORUM & ROTH
53 W. Jackson Boulevard, Suite 1616
Chicago, IL 60604
312.922.6262

**FILED**

**APRIL 22, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Clarence Shedd, | |
| **Plaintiff,** | **08CV1913** |
| | **JUDGE GETTLEMAN** |
| vs. | **MAG. JUDGE COX** |
| 1550 N. Lakeshore Condo Association,<br>Richard Condon,<br>Ruby Levy,<br>Janet Hope,<br>Thomas Engblom and<br>Fari Harandi | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**RECEIVED**

APR 0 3 2008  TC

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Apr 3, 2008

## COMPLAINT

Plaintiff, Clarence Shedd, complains of Defendant, 1550 North Lake Shore Drive Condominium Association, as follows:

**Nature of the Case:**

1. Racial discrimination and Retaliation in violation of 42 U.S.C. Sec. 1981

**The Parties:**

2. Plaintiff, Clarence Shedd, is a citizen of the United States and a resident of Cook County, Illinois, and for all times relevant to this Complaint was an employee of Defendant.

3. Defendant, 1550 N. Lakeshore Drive Condo Association, is a corporation conducting business in Cook County, Illinois, that Plaintiff performed services for in Cook County, Illinois, and is an employer within the meaning of 42 U.S.C. Sec. 1981.

**Jurisdiction and Venue:**

4. This court has jurisdiction over Defendant pursuant to 42 U.S.C.S. §2000e(f) and 28 U.S.C.S. §§ 1331 and 1343(4).

5. Venue is proper pursuant to 28 U.S.C.S. §1391(b) because the unlawful employment practices alleged herein occurred in Cook County, Illinois, which is within this Court's division of the U.S. District Court, Northern District of Illinois.

1

**Procedural History:**

6. On June 19, 2001. Plaintiff filed a Charge of Discrimination with the City of Chicago Commission on Human Relations

7. On November 19, 2003. Plaintiff filed an additional charge of retaliation with the Commission.

8. Plaintiff satisfied all conditions precedent to filing this action.

**Plaintiff's Employment with Defendant:**

9. Defendant hired Mr. Shed as a garage manager in August 1997.

10. In June 2001. Mr. Shedd filed a complaint of racial harassment with the Chicago Commission on Human Relations..

11. In November 2003. Mr. Shedd filed an additional retaliation complaint with the same agency..

12. In late March 2004. Mr. Shedd took a medical leave of absence and had surgery for colon cancer.

13. In late April 2004 upon Mr. Shedd's return to work there was a new property manager Janet Hope.

14. The new property manager Ms. Hope continued the harassment by accusing Mr. Shedd of pocketing money and allowing people to park without paying.

15. Ms. Hope refused to pay Mr. Shedd according to the agreement which was established since his date of hire.

16. Mr. Shedd was paid a bonus rate. Before going on medical leave of absence Mr. Shedd was being paid 18.40 per hour (the union rate 14.40 per hour plus a bonus of 4.00 per hour) for 80 hours each pay period. When he worked overtime he earned time and a half at the base rate of 14.40

17. In May 2004 Mr. Shedd's sister passed away from colon cancer

18. In July 2004 Mr. Shedd took time off for a family memorial

19. On July 27, 2004 Mr. Shedd was called into a meeting with Ms. Hope(property manager), Mr. Condon( Board president ) Ms. Levy (Board vice pres.) Mary Wolf ( Senior vice president of Sudler property management) and another Sudler representative whose name he did not catch. Ms. Hope asked Mr. Shedd why she could not park her car on the first floor. Mr. Shedd responded that it was the policy of the condo association that no employee was to park on the first floor. Mr. Condon retorted that Ms. Hope was not an employee. Then, the other Sudler representative asked for proof of Mr.Shedd's compensation agreement. When he indicated it had been a handshake agreement , the Sudler representative announced that if it wasn't in writing it wasn't enforceable. Ms. Hope stated that it would be impossible for the two of them to work together. Feeling attacked and sensing that his termination was imminent , Mr. Shedd rose from his seat and walked out of the office and out of the building.

## Count One: Racial discrimination and Retaliation

20. Based upon the foregoing, Defendant violated Racial discrimination and Retaliation , 42 U.S.C. Sec 1981 Equal Rights under the law.

*Wherefore,* Plaintiff prays for the following relief:

A. That the Court enter a judgment in his favor and against Defendant; and that the Court order Defendant to reinstate Plaintiff and reimburse him for all back pay other benefits that he would have received but for Defendant's conduct;

B. That the Court award Plaintiff reinstatement, or "front-pay" in lieu of reinstatement in the amount sufficient to compensate him for earnings he would have received but for Defendant's conduct;

C. That the Court award Plaintiff any and all compensatory damages to which he may be entitled;

D. That the Court award Plaintiff any and all punitive damages to which he may be entitled;

E. That the Court award prejudgment interest on any and all damages to which the Court finds that Plaintiff is entitled;

F. That the Court award reasonable attorneys fees and costs, and

G. That the Court award Plaintiff any and all other relief as this Court sees fit.

H. Plaintiff requests trial by jury.

Respectfully submitted,
Clarence Shedd,
Plaintiff.

By: _____
Pro Se

Clarence Shedd
1010 W. 18th Street
Broadview, Illinois 60155
(708) 343-6844
csevillests@aol.com

**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Clarence Shedd, | |
| Plaintiff, | 08 CV 1913 |
| vs. | Judge Gettleman |
| | Magistrate Judge Cox |
| 1550 N. Lakeshore Condo Association, | |
| Richard Condon, | |
| Ruby Levy, | JURY TRIAL DEMANDED |
| Janet Hope, | |
| Thomas Engblom and | |
| Fari Harandi | |
| Defendants. | |

## DECLARATION OF MARK ROTH IN SUPPORT OF DEFENDANTS'

## MOTION TO DISMISS

I, Mark Roth, hereby declare and state under penalty of perjury as follows:

1. I make this declaration in support of Defendants' Motion to Dismiss Plaintiff's Complaint.

2. I am an attorney with the law firm of Orum & Roth LLC, counsel for Defendants herein.

3. Unless otherwise stated, I have personal knowledge of the statements made herein.

4. Attached as Exhibit "C" is a true and correct copy of the charge of discrimination filed by Clarence Shedd against 1550 Lakeshore Condominium Association on June 14, 2001. That charge was filed with the City of Chicago Commission on Human Relations. The charge was given case number 01-E-69.

5.      Attached as Exhibit "D" is a true and correct copy of an amended complaint filed by the Plaintiff herein with the City of Chicago Commission on Human Relations. That amended complaint was filed on November 19, 2003 and was also filed under charge number 01-E-69.

6.      Attached as Exhibit "E" is a true and correct copy of an Order entered by the City of Chicago Commission on Human Relations on August 18, 2005 entitled "Order Finding No Substantial Evidence." That Order entered by the City of Chicago Commission on Human Relations found no substantial evidence of discrimination based on the allegations in the complaint and amended complaint referenced therein.


Pursuant to 28 U.S.C. Section 1746, the above statements are true and correct.


Dated: June 26, 2008


_____
Mark D. Roth


**EXHIBIT B**

City of Chicago
## COMMISSION ON HUMAN RELATIONS
740 N. Sedgwick, 3rd Floor
Chicago, IL 60610
(312) 744-4111 [Voice] / (312) 744-1088 [TDD]

## COMPLAINT

| COMPLAINANT'S NAME | TELEPHONE NO. |
|---|---|
| Clarence Shedd | (708) 343-6844 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 1010 W. 18th | Broadview, IL 60155 |

| RESPONDENT'S NAME(S) | TELEPHONE NO. |
|---|---|
| 1550 North Condominium Association, its Board of Directors, and Roland Glenn | (312) 664-1550 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 1550 N. Lake Shore Dr. | Chicago, IL 60610 |

**DISCRIMINATION BASED ON (CHECK AS MANY AS APPROPRIATE)**

( X )-RACE         (___)-COLOR          (___)-SEX
(___)-AGE          (___)-RELIGION       (___)-DISABILITY
(___)-NATIONAL ORIGIN   (___)-ANCESTRY      (___)-SEXUAL ORIENTATION
(___)-MARITAL STATUS    (___)-PARENTAL STATUS   (___)-MILITARY DISCHARGE
(___)-SOURCE OF INCOME  (___)-RETALIATION       STATUS

**DATE DISCRIMINATION TOOK PLACE-LATEST DATE IF CONTINUING**

On or about May 15, 2001

**TYPE OF COMPLAINT**
( X )-EMPLOYMENT   (___)-HOUSING   (___)-PUBLIC ACCOMMODATION   (___)-CREDIT   (___)-BONDING

**THE PARTICULARS ARE (ADD EXTRA PAGE/S AS NEEDED)**

1. I am African-American.

I swear or affirm that I have read this Complaint (this page and 1 additional page) and that it is true and correct to the best of my knowledge, information and belief.

_Clarence Shedd_
Signature of Complainant

_June 14, 2001_
Date Signed

CCHR Complaint 2

2. I have been employed by 1550 N. Condominium Association as the garage manager since August 1997. I supervise ten employees (all African-American). My responsibilities include parking and retrieving cars for the owners and completing paper work. This is done through an intercom system.

3. On or about May 15, 2001, Roland Glenn (race Caucasian) who owns a condominium in the building, harassed me and threatened to have me fired. He called me a "goddamn liar" and a "son of a bitch." His outburst was in response to a form I had completed regarding a scratch on his car. The last two questions ask if it is believed that a person who works in the garage is responsible and if the scratch happened on the premises. I answered no to both questions. After I gave Glenn his copy he began calling me all kinds of names.

4. I informed Glenn I was going to notify the manager of the building (Mike Johnson, race Caucasian). As I proceeded to Johnson's office, Glenn followed me. He was still yelling and calling me all types of names. Upon entering Johnson's office I informed him of what had happened. Glenn then told Johnson I was a "damn liar" and he knew enough people in the building so that he was going to get me fired.

5. I believe that Glenn's outburst reflects his bias against African-Americans. On other occasions he has called me "boy." Anytime his car is not downstairs waiting for him, he'll say to me "where is my goddamn car, where is my car?" He does this in a very condescending way. One of my employees Freddie Lucas (race, African-American) told me that Glenn had called a co-worker (Ceasar McDaniel) a "nigger."

6. I informed the building manager and the board of the association of the incident. Glenn's treatment of me has created a hostile working environment. I do not believe he would treat a Caucasian employee in this manner. Although the board is aware of and in a position to prevent the discrimination, they have taken no action to do so. In fact their response was "that's how he is."

The above conduct is a violation of Chapter 2-160 of the Chicago Municipal Code. I seek all relief available under the law.

W.J.
A:\Shedd Comp.

City of Chicago
COMMISSION ON HUMAN RELATIONS
740 N. Sedgwick, 3rd Floor
Chicago, IL 60610
(312) 744-4111 [Voice] / (312) 744-1088 [TDD]

## AMENDED COMPLAINT

| COMPLAINANT'S NAME | TELEPHONE NO. |
|---|---|
| Clarence Shedd | (708) 343-6844 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 1010 W. 18th St. | Broadview, IL 60155 |

| RESPONDENT'S NAME(S) | TELEPHONE NO. |
|---|---|
| 1550 North Condominium Association and it's Board of Directors | (312) 664-1550 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 1550 N. Lake Shore Dr. | Chicago, IL 60610 |

DISCRIMINATION BASED ON (CHECK AS MANY AS APPROPRIATE)

( )-RACE          ( )-COLOR           ( )-SEX
( )-AGE           ( )-RELIGION        ( )-DISABILITY
( )-NATIONAL ORIGIN   ( )-ANCESTRY    ( )-SEXUAL ORIENTATION
( )-MARITAL STATUS    ( )-PARENTAL STATUS   ( )-MILITARY DISCHARGE STATUS
( )-SOURCE OF INCOME  (X)-RETALIATION  ( )-GENDER IDENTITY

DATE DISCRIMINATION TOOK PLACE-LATEST DATE IF CONTINUING
October 29, 2003

TYPE OF COMPLAINT
(X)-EMPLOYMENT    ( )-HOUSING    ( )-PUBLIC ACCOMMODATION    ( )-CREDIT    ( )-BONDING

THE PARTICULARS ARE (ADD EXTRA PAGE/S AS NEEDED)
This complaint is in addition to and does not substitute for the one filed by me on June 14, 2001.

I swear or affirm that I have read this Complaint (this page and 1 additional page/s) and that it is true and correct to the best of my knowledge, information and belief.

_____        Jan. 19, 2003
Signature of Complainant                     Date Signed

CCHR Complaint 2                                           Case No. 01-E-69

1.   I am currently employed by Respondent 1550 Condominium Association as the Garage Manager. I supervise nine employees.

2.   In January 2003, Thomas Engblom was hired by 1550 Condominium Association as its Property Manager. He replaced Michael Johnson. Engblom is my supervisor, and he is aware that I have filed a complaint against Respondents.

3.   Since I filed my complaint, on June 14, 2001, I have been subjected to retaliation by Richard Condon, President of 1550 Condominium Association's Board of Directors. He has been trying to have me fired for the past two years.

4.   On October 29, 2003, Condon had a meeting with Engblom and Ruby Levy, who is a member of the Association's Board of Directors.

5.   After the meeting was over, Engblom talked to me. He informed me that Condon said to him [Engblom], "When are you going to fire Freddy (my nickname)?"

6.   Engblom then told Condon that I was doing a good job as Garage Manager. He also told Condon that the garage operators were running smoothly, and that the number of accidents had decreased from the previous year.

I believe that Condon, as President of the 1550 Condominium Association, is trying to have me terminated because I had filed a complaint against the Condominium Association and it's Board of Directors. This is in retaliation and in violation of Chapter 2-160 of the Chicago Municipal Code. I am seeking available relief under the law.

City of Chicago
## COMMISSION ON HUMAN RELATIONS
740 N. Sedgwick, 3rd Floor, Chicago, IL 60610
312/744-4111(voice), 312/744-1081 (Facsimile), 312/744-1088 (TTY)

RECEIVED

1 8 AUG 2005

ORUM & ROTH

IN THE MATTER OF )
)
Clarence Shedd )
COMPLAINANT, )           Case No. 01-E-69
AND )
)           Date Mailed: August 15, 2005
)
1550 North Lake Shore Drive Condominium )
Association )
RESPONDENT. )

To:    Clarence Shedd                     Mark D. Roth, Aimee J. Woodbury
       1010 West 18th                     Orum & Roth
       Broadview, IL 60155                53 West Jackson Boulevard, Suite 1616
                                          Chicago, IL 60604

# ORDER FINDING NO SUBSTANTIAL EVIDENCE

On August 11, 2005, the Chicago Commission on Human Relations determined that, with respect to the above-captioned case, there is no substantial evidence of the alleged violation of the Chicago Human Rights Ordinance or the Chicago Fair Housing Ordinance. Accordingly, the above-captioned complaint is hereby dismissed. A copy of the Commission's Investigative Summary is enclosed.

To seek review of this order, the Complainant must file with the Commission and serve on the Respondent a "Request for Review" within 30 days of the mailing of this order, pursuant to Reg. 250.110. Request for Review forms are available at the Commission's office or the Complainant may file one without using a form so long as his or her filing clearly seeks a Request for Review. Requests for Review may not exceed 10 pages without leave from the Commission.

CHICAGO COMMISSION ON HUMAN RELATIONS
Clarence N. Wood, Chair/Commissioner

City of Chicago
# COMMISSION ON HUMAN RELATIONS
740 N. Sedgwick, 3rd Floor, Chicago, IL 60610
312/744-4111(voice), 312/744-1081 (Facsimile), 312/744-1088 (TTY)

## INVESTIGATION SUMMARY

The attached Investigation Summary outlines relevant evidence obtained in the investigation of the case(s) named on the first page of the Summary. This document is a summary of the investigation and not a verbatim account of each interview or each document received.

The "Determination" section reflects the decision of the Commission's Executive Compliance Staff, the group of Commission senior staff which decides whether or not there is Substantial Evidence of an Ordinance violation. The Determination may or may not reflect the recommendation of the Investigator.

Parties and/or their representatives of record may now review the investigation file by making a request to the Commission. The request must be made at least 48 hours before the requesting person wishes to review the file. Access to the investigation file is governed by Regulation 220.410.

Pursuant to Chicago Municipal Code §2-120-510(f), neither the Commission nor its staff shall disclose any information obtained in the course of its investigation (except as otherwise required by law or intergovernmental agreement).




**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**

**INVESTIGATION SUMMARY**

| | |
|---|---|
| **Case Number:** 01-E-069 | **Date of Determination:** August 2005 |

**Complainant:** Clarence Shedd

**Respondents:** 1550 N. Lake Shore Drive Condominium Association and Board of Directors

**Type of Case** x **Employment** __**Housing** __**Public Accommodation** __**Credit** __**Bonding**

| **CLAIM** | **BASIS** | **DETERMINATION** |
|---|---|---|
| **A.** Harassment | Race | No Substantial Evidence |
| **B.** Harassment | Retaliation | No Substantial Evidence |

**Date Complaint Filed:** April 14, 2001          **Date of Violation:** May 15, 2001

**Date of Amended Complaint:** November 19, 2003          **Date of Violation:** October 29, 2003

**Investigator:** Kristen E. Spinato          **Supervisor:** JoAnn Newsome

**CLAIM A** - Harassment/Race

**1. COMPLAINANT POSITION**

Complainant, who is African-American and was the Garage Manager of the 1550 North Lake Shore Drive Condominium, alleges that a resident of the building, Rowland Glenn, harassed him based on his race. This allegation arose out of an incident on May 15, 2001, when Complainant met with Glenn to resolve a dispute regarding the manner in which Complainant completed an incident report for a scratch on Glenn's car. The last two questions on the form asked whether a garage attendant was responsible for the damage and whether the damage occurred in the garage. Complainant states that he answered "no" to both questions. After seeing the completed form, Glenn

- 1 -

told Complainant, "Freddy[1], I have always been your friend. I even got you a raise. Why didn't you answer the last two questions on the form? You know the damage was done in this garage."

Complainant alleges that when he responded that in his opinion the damage was not done in the garage, Glenn said in a loud yelling voice, "Why you son of a bitch, I am going to have your job, you stupid son of a bitch!" Complainant told Glenn he was going to have him written up and walked into the office of Mike Johnson, Property Manager, while Glenn followed yelling at Complainant that he was a liar. Complainant turned back and told Glenn he was going to sue him, to which Glenn replied that Complainant and his lawyer could "go to hell."

Complainant reports that when he arrived at Johnson's office and told Johnson he wanted Glenn written up for threatening Complainant's job, Glenn shouted, "This stupid son of a bitch is lying and he is goi͏      his job." Complainant left the office.

Later       Complainant alleges Glenn returned to the garage to get his car and said to Complainant,  ͏ʳeddy, where is my goddamn car?" Complainant responded that Glenn should talk to his attorney. Complainant asserts that Glenn shouted, "You and your lawyer are going to get your asses in a sling."

Complainant asserts he met with Richard Condon, the President of the Board, the next day and described the incident that occurred with Glenn. Complainant acknowledges that Condon was very sympathetic and said he would have a talk with Glenn. Complainant further asserts that Condon then stated that is "just how [Glenn] is." Complainant sent a letter to the Board on May 29, 2001, describing the incident with Glenn and demanding that they do something about his behavior. They never did.

Complainant argues that Glenn would not be allowed to treat a Caucasian employee in this manner. Complainant further alleges that on two separate occasions Glenn called him "Boy." Finally, Complainant alleges that a garage attendant, Freddie Lucas, told him that Glenn called another garage attendant, Caesar McDaniel, a "nigger."

## 2. RESPONDENT DESCRIPTION & BACKGROUND

Respondent 1550 N. Lake Shore Drive Condominium Association Board of Directors is a not-for-profit entity. At the time of the Complaint, the President of the Board of Directors was Richard Condon and the Property Manager was Michael Johnson.

---

[1] "Freddy" is Complainant's nickname.

## 3. RESPONDENT POSITION

. Respondent asserts that the conduct alleged by Complainant does not rise to the level of harassment and was not based on Complainant's race. Respondent further asserts that while Complainant complained about Glenn's behavior, he never stated that he felt harassed based on his race. Finally, Respondent argues it cannot be held responsible for Glenn's actions because Glenn was not an employee, nor was he a Board Member of the Association, nor did he have any authority or control over Complainant's employment.

Respondent states that Glenn contacted Johnson in May 2001 to complain that Complainant did not respond to Glenn's complaint about a scratch on his car. Johnson discussed the situation with Complainant and Complainant agreed to complete a report. About a week later Glenn called Johnson to complain that Complainant left the last two questions on the claim report blank: "Was accident caused by attendant:" and "In your judgment, do you think this accident was caused by attendant?" Johnson told Complainant to work with Glenn to resolve the situation.

Respondent acknowledges that it received a letter from Complainant dated May 29, 2001, in which Complainant complained about Glenn's alleged threat to have Complainant fired. Johnson conducted an investigation by interviewing Complainant and Glenn. Based on the notice he was given by Complainant, he believed he was investigating a dispute about a scratch on Glenn's car. Johnson concluded that heated words were exchanged, but believed Complainant's concerns were addressed when he reassured Complainant that Glenn had no authority to fire him. Johnson also did not feel any further action was required because the Condominium Association had no authority to stop Glen from swearing.

Respondent asserts that Glenn does not limit his outbursts to African-Americans, but has been observed behaving short-temperedly and using profanity to people he interacts with regardless of their race, gender, religion or nationality. Respondent acknowledges that while Glenn has acted "short-temperedly and profanely" on this occasion and others, Respondent is unaware of any authority they have to make Glenn, as a unit owner, stop swearing. Respondent explains that the Condominium Declaration and By-Laws are not designed to address this issue and it would be extremely difficult to police unit owners on the issue of short-temperedness and profanity.

## 4.    DESCRIPTION OF RELEVANT DOCUMENTS

a.    **Title or Description:** Letter from Complainant to Respondent, dated May 29, 2001
**Source:** Respondent
**Relevant Content:**

In the letter, Complainant states he is writing to Respondent to "document the event and register my complaint concerning a dispute with a unit owner over an auto damage claim and the threats he made to me and about my treatment as an employee of the Association." The letter makes no mention of Complainant's belief that the owner mistreated him based on his race.

**b.**    **Title or Description**: Letter from Rowland Glenn to Investigator Anderson, dated August 7, 2001
**Source:** Rowland Glenn (Now deceased)
**Relevant Content:**

In the letter, Glenn admits he called Complainant a liar but denies using any racial slurs. He states he would never use racially derogatory language. Glenn supports his position by asserting that he has dedicated time and effort to the advancement of the African-American community. Glenn describes his efforts in tutoring African-America children at Cabrini-Green for over eight years. He states that he was chosen, as an outstanding tutor, to give President Clinton a tour of the school. Glenn enclosed letters the children wrote to him and a picture of him with President Clinton at the school.

## 5.    WITNESS STATEMENT

**A.**    **Name:** Malcolm Ramsey
**Title:** Garage Attendant
**Relevant Characteristic:** African-American
**Witness Proposed By:** Respondent
**Statement Provided:**

Ramsey states he has worked at the garage at 1550 N. Condominium Association since 2000. Ramsey reports that Glenn was a "grumpy old man" and was abrupt with everyone regardless of his or her race. Ramsey states he occasionally heard Glenn use the word "boy." For example, Glenn would say, "How are you boys doing today?" and "You boys are the best." Ramsey further states that he did not think Glenn's statements had a racial connotation. Finally, Ramsey states that he never heard Glenn use the word "nigger."

## 6.    UNAVAILABLE EVIDENCE

**a.** Rowland Glenn is not available for an interview because he died August 2, 2002.

**b.** On February 24, 2005, the Investigator requested that Respondent provide the contact information for Michael Johnson and Richard Condon. On March 17, 2005, Respondents responded that after inquiry into the 1550 Condominium Association's files and speaking with the current Association President and current Property Manager no contact information for these individuals was available, as Johnson is no longer employed by the Association, Condon sold his unit, and neither kept in contact with the Association or its members.

## 7.    DETERMINATION

Complainant alleges that a unit owner harassed him because he is African-American and that Respondent did not act when Complainant reported the harassment. Respondent contends that

- 4 -

Glenn's actions did not rise to the level of harassment and that it was not given notice of harassment based on race. Respondent further contends that when Complainant notified it of his altercation with Glenn regarding the scratch on his car, Respondent's property manager conducted an investigation and reassured Complainant that he would not be fired.

There is no evidence that Glenn harassed Complainant based on race during the altercation on May 15, 2001 or that Respondent was given notice of harassment based on race. Nothing Complainant alleges about the altercation indicates that Glenn was motivated by a discriminatory animus when he yelled at Complainant. The names Complainant alleges Respondent called him on that day, "son of a bitch" and "stupid," do not have racial connotations.

The evidence shows that even if Complainant's allegation that his co-worker told him that Glenn called another co-worker "nigger" once is true, this does not necessarily point to racial animus as the motivator of Glenn's conduct toward Complainant. Similarly, if as Complainant alleges, Glenn called him "boy" once, that conduct is not severe or pervasive enough to rise to the level of harassment and does not clearly point to racial animus. Another garage attendant stated that he never heard Glenn use the term "nigger" and when he heard Glenn say "How are you boys doing today?" did not interpret it to have racial connotation.

Moreover, Complainant does not allege that he reported to Respondent that Glenn called a co-worker "nigger," called Complainant "boy," or otherwise harassed him based on his race. Complainant's letter to the Board reporting May 15, 2001 altercation also made no mention of race-based harassment. Respondent responded appropriately to the allegations made by Complainant.

Accordingly, the Commission finds no substantial evidence that Complainant was harassed based on his race.

**CLAIM B -**Harassment/Retaliation

1.  **COMPLAINANT POSITION**

Complainant asserts that his supervisor at the 1550 North Condominium Association garage, Michael Johnson and 1550 North Condominium Association board members Richard Condon and Ruby Levy harassed him in retaliation for filing a Complaint with the Commission on June 14, 2001.

Complainant alleges that on July 20, 2001, he requested a leave of absence and Johnson denied the request. Complainant states that he needed the time off so he took it. Subsequently, Johnson issued a disciplinary action against Complainant for taking an unauthorized leave of absence. Complainant further alleges that before Johnson left his position in December 2001, he told Complainant that Condon had forced him to discipline Complainant. Johnson said, "Watch yourself, Freddy. Be careful, because Condon is out to get you."

Complainant also alleges that in the spring of 2003, Condon overruled a decision made by Complainant and Thomas Engblom, Johnson's replacement, to remove the television from the garage as a solution to a problem identified in a report made by the Board of Directors that stated there were too many accidents in the garage. Complaint claims Engblom told him that Condon told Engblom to return the television to the garage. Engblom told Complainant, "Watch yourself Freddy, because Condon is out to get you." Complainant further alleges that Engblom told him that Condon and Levy twice in October of 2003 asked him, "When are you going to fire Freddy?"

Complainant filed his amended Complaint with the Commission on November 14, 2004. Complainant resigned August 4, 2004.

## 2.    RESPONDENT POSITION

Respondent denies Complainant was harassed in retaliation for filing a complaint against it with the Commission. Respondent asserts that the actions Complainant alleges were retaliatory were not retaliatory and they did not have any adverse affects on Complainant's employment.

Respondent acknowledges that Complainant requested a leave of absence on July 20, 2001, but asserts that Johnson did not deny the request. Complainant left work before Johnson could discuss Complainant's request with him. Respondent asserts that Complainant's request was not in accordance with Article 16.1(a) of the Collective Bargaining Agreement and Complainant had requested a medical leave but did not provide the required medical verification. Johnson issued a Disciplinary Warning Notice to Complainant on August 1, 2001, for leaving work for six days without permission.

Respondent further denies that Condon and Levy asked Engblom, "When are you going to fire Freddy?" Respondent contends that even if Condon and Levy did insinuate that Complainant should be terminated, those comments did not result in any adverse effects on Complainant. Complainant alleges the comments were made in October 2003 but Complainant continued to work, receive raises, and receive promotions until July 2004, when he resigned on his own.

## 3.    DESCRIPTION OF RELEVANT DOCUMENTS

a.    **Title or Description:** Respondent's Collective Bargaining Agreement, not dated
      **Source:** Respondent
      **Relevant Content:**

The Agreement states that the Employer may, at its sole discretion, grant a personal leave of absence to an employee with seniority provided that the employee requests the leave, in writing, at least one week in advance of such leave, unless there was no possibility that the employee had such prior knowledge of the necessity of the leave. The Agreement also states that approval of leaves of absence shall be in writing with a copy to the Union.

  **b.** **Title or Description:** Respondent's Employee Rules, not dated
    **Source:** Respondent
    **Relevant Content:**

Rule number five states that employees should not leave the garage in the middle of a shift without the permission of the supervisor.

  **c.** **Title or Description:** Complainant's Request for Leave, dated July 20, 2001
    **Source:** Respondent
    **Relevant Content:**

Complainant states that he is requesting a leave of absence as of July 20, 2001. He states that the working conditions have "taken a toll." He claims that the building manager has refused to work with him and he needs to get away for a few weeks. Complainant does not characterize the requested leave of absence as a medical leave of absence.

  **d.** **Title or Description:** Letter to Complainant from Michael Johnson, Property
    Manager, dated July 24, 2001
    **Source:** Respondent
    **Relevant Content:**

The letter states that on July 20, 2001, Complainant requested a leave of absence "for a few weeks" but before Johnson could speak with Complainant to get information about his request or respond to him, he walked off the job. The letter further states that Complainant's request was not in accordance with Article 16.1(a) of the Collective Bargaining Agreement and was not supported by any medical verification of his need for a leave of absence. The letter states that Complainant's leave was unauthorized and he was subject to immediate termination for job abandonment.

In the letter Johnson advised Complainant that he had to (1) return to work within 24 hours of receipt of this letter, or (2) contact Johnson within 24 hours to inform him of his condition and whereabouts and, within 48 hours, provide Respondent with written verification of his need to be off work since July 20, 2001, a prognosis, and an expected date of return.

  **e.** **Title or Description:** Employee Disciplinary Report, dated August 1, 2001
    **Source:** Respondent
    **Relevant Content:**

The Report states that on Friday, July 20, 2001, Complainant left his job without authorization and was away until Thursday, July 26. The Report indicates that Complainant did not give notice of his request for leave of absence and Complainant did not submit any medical verification of emergency leave. The Report states that Complainant's actions are unacceptable, will not be tolerated, and if his actions continue they could lead to more serious disciplinary action.

4.    **UNAVAILABLE EVIDENCE**

On February 24, 2005, the Investigator requested that Respondent provide the contact information for Michael Johnson, Richard Condon, Thomas Engblom, and Ruby Levy. On March 17, 2005, Respondents responded that after inquiry into the 1550 Condominium Association's files and speaking with the current Association President and current Property Manager no contact information for these individuals was able to be obtained, as they are no longer employed by the Association nor have they kept in contact with the Association or its members.

5.    **DETERMINATION**

Complainant alleges that Michael Johnson, Richard Condon, and Ruby Levy harassed him in retaliation for filing a Complaint with the Commission. Respondent denies that Complainant was harassed.

There is no evidence that Respondent wrongfully denied Complainant a leave of absence or that Respondent wrongfully issued Complainant a disciplinary notice. The evidence shows that Complainant did not follow the correct procedures in requesting the leave of absence. The evidence also shows Respondent issued a disciplinary notice to Complainant for leaving work for six days without permission. Complainant admits he left without permission. There is no evidence that Respondent's explanation for denying the leave or for issuing the disciplinary notice is a pretext for retaliation.

There is also no evidence of a discriminatory or retaliatory motive or animus in Complainant's assertions that Condon and Levy asked Engblom twice when he would fire Complainant. The timing of the events does not suggest a discriminatory motive because seven months passed between the first time Engblom told Complainant that Condon and Levy allegedly asked when Engblom was going to fire Complainant and when Complainant filed his Complaint.

Similarly, Complainant was never fired, even after he had left the job without obtaining approval for a leave of absence. There is no evidence of a discriminatory or retaliatory motive or animus in Complainant's assertion that Condon made him and Engblom put the television back in the garage. Additionally, the evidence shows that almost two months passed from the time Complainant filed with the Commission and Condon told him to put the television back. Furthermore, Complainant admits he made the decision to remove the television with Engblom, so Condon's instruction was not directed solely at Complainant.

Even if all of Complainant's allegations are true, the alleged conduct is not severe or persuasive enough to amount to harassment over the course of time from June 14, 2001, when he filed his original complaint, to November 19, 2003, when he filed his amended complaint.

Therefore, the Commission finds no substantial evidence that Respondent retaliated against Complainant because he filed a Complaint with the Commission.