IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CLARENCE SHEDD,              )
                             )
         Plaintiff,          )   No. 08 C 1913
     v.                      )
                             )   Judge Robert W. Gettleman
1550 N. LAKESHORE CONDO ASSOCIATION,  )
                             )
         Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Clarence Shedd has brought a two count amended complaint against his former employer, 1550 N. Lakeshore Condo Association, alleging racial discrimination and retaliation in violation of 42 U.S.C. § 1981. Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons discussed below, that motion is granted.

## FACTS

Defendant is the condominium association of a residential building located at 1550 N. Lakeshore Drive. The building has an underground parking garage with over 240 parking spaces. Plaintiff was employed by defendant from 1997 to July 27, 2004, as garage manager, in charge of the garage's 9 to13 attendants who parked and served the residents' cars. In 2001 plaintiff had an incident with resident Roland Glen. Glen was upset about a scratch on his car and, after disagreeing with plaintiff about the cause, yelled at plaintiff, called him names and threatened his job. Glen made no racially discriminatory comments at that time, but according to plaintiff Glen had a history of angry outbursts containing racially derogatory terms. After the incident plaintiff filed a charge of discrimination against defendant with the City of Chicago Commission on Human Rights ("CCHR").

On November 19, 2003, plaintiff filed an amended charge alleging that defendant retaliated against him for filing the initial charge. The amended charge alleged that the then-property manager, Thomas Engblom, told plaintiff that the president of the board, Richard Condon, wanted plaintiff fired.

The property was managed by Sudler Property Management. Engblom was the on-site property manager from January 2001 through May or June 2004. Engblom trained his replacement, Janet Hope, before he left. Hope began on-site in approximately April 2004. Engblom told Hope that plaintiff had a difficult personality and that he had to be handled with sensitive hands. He thinks he told Hope about plaintiff's discrimination charges, but Hope denies learning of the charges prior to reading the instant complaint.

Hope's first contact with plaintiff was when she called him at his home in late April 2004 while he was on medical leave, to report that a car had been stolen. Throughout the course of her tenure Hope had certain disagreements with plaintiff. One such disagreement involved plaintiff's rate of pay. Plaintiff is a union member but claimed that as an incentive to take the job defendant had agreed to pay him $4 an hour above union scale. When Hope became property manager she did not want to pay plaintiff above union scale wages absent a written acknowledgment of the agreement. Plaintiff had no such writing.

Another dispute involved where Hope's car was parked. During her first several months, her car was always parked on the main floor. After a minor dispute with plaintiff about the cleanliness of the garage, plaintiff refused to allow Hope's car to be parked on the main floor, claiming that the rule was that all employee's cars were parked on the lowest level. Hope told plaintiff that she made the rules and that she was not an employee.

2

On July 27, 2004, Hope called plaintiff into a meeting in her office. Present were plaintiff, Hope, two of Hope's supervisors from Sudler, and Condon. At the meeting, Mary Wolf, the current Sudler account supervisor, introduced her replacement, Margaret Stokes, who is African American. Stokes asked plaintiff for written support for his pay rate. She also questioned plaintiff about Hope's car. Plaintiff indicated that because Hope was an employee of defendant, her car should be parked on the lower level. Condon replied that Hope was not an employee. Plaintiff became angry, stated that "he knew where this was going," and left the meeting. At this point the parties' version of events differ. Plaintiff claims that he did not quit, did not threaten to quit, that he simply waited around for awhile and then got in is car and went home. He was not scheduled to work the next two days (Saturday and Sunday) but on Monday he called the front desk and said he would not be in. The next day he simply did not go into work because he was upset.

Hope claims that plaintiff quit during the meeting, that after the meeting plaintiff went into Hope's office, walked up very close to her in an intimidating manner and dropped his keys on her desk. Faradeh Harandi, a resident of the building and lawyer who had represented plaintiff in the past, testified that on July 27th plaintiff told her that he had resigned. She also testified that plaintiff had on a number of occasions previously told her that he wanted to resign, but she had always managed to change his mind.

Plaintiff returned to the garage on his next scheduled work day (after the two days he missed) and found the lock cut off his locker. When he inquired about this, Hope told him that he no longer worked there.

3

After plaintiff's employment ended, defendant initially offered the position to a long time employee of African American descent. When that employee turned the position down, defendant hired James Fuentes, an employee of Puerto Rican descent.

## DISCUSSION

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Becker v. Tenenbaum-Hill Assoc., Inc.</u>, 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. <u>Fisher v. Transco Services-Milwaukee, Inc.</u>, 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). This standard is applied with added vigor in cases were issues of intent and credibility often dominate. <u>Sarsha v. Sears, Roebuck & Co.</u>. 3 F.3d 1035, 1038 (7th Cir. 1993). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "There mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which a jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252.

4

Plaintiff's complaint alleges violations of his civil rights under 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcement of contracts. When pursuing a § 1981 claim, plaintiff can proceed by either the direct or indirect method. The direct method requires evidence that defendant was motivated by animus based on plaintiff's race when he was denied an employment benefit or he suffered and adverse employment action. <u>Andonissamy v. Hewitt-Packard Co.</u>, 547 F.3d 841, 849-50 (7th Cir. 2008). The indirect method requires plaintiff to establish a prima facie case of discrimination by demonstrating that plaintiff: (1) is a member of a protective class; (2) was meeting his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) other similarly situated employees not part of the same protected class were treated more favorably. <u>Id</u>. (Citing <u>Fane v. Locke Reynolds, LLP</u>, 480 F.3d 534, 538 (7th Cir. 2007)).

If plaintiff succeeds in establishing a prima facie case, the burden of production shifts to defendant to offer a permissible, non-discriminatory reason for the adverse employment action. If defendant meets this burden, plaintiff must demonstrate that defendant's purported reason is a pretext for discrimination or that the decision was tainted by impermissible race-based motives. The ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff remains at all times with plaintiff. <u>Id</u> .

In the instant case, plaintiff attempts to proceed under the indirect method. There is no dispute that plaintiff is a member of a protected class and that, at least until July 27, 2004, was meeting defendant's legitimate performance expectations. Defendant argues, however, that plaintiff quit and, therefore, did not suffer an adverse employment action. Plaintiff, of course, claims that he did not quit and that defendant fired him after the July 27 meeting.

5

At first glance, this factual dispute would appear to require denial of defendant's summary judgment motion. First glances can be deceiving, however, because it really matters not whether plaintiff quit in the face of eminent discharge that could amount to a constructive discharge, see Fisher v. Avanade, 519 F.3d 393, 409 (7th Cir. 2008), or whether plaintiff was terminated. It does not matter which fact scenario is correct, because plaintiff has actually no evidence that any of defendant's decisions were tainted by impermissible race-based motives. There is no evidence, for example, that Stokes, who is African American, refused to pay plaintiff's bonus salary because plaintiff is African American. There is no evidence that Hope, who is married to an African American, had any dispute with plaintiff based on his race.

Indeed, plaintiff testified that none of defendant's property managers ever discriminated against him based on his race. Plaintiff's major complaint is that in years past, Condon had on a few occasions called him "boy." It was those statements (and his dispute with Glen, who had passed away well before the events in question) that led plaintiff to file his initial charge with the CCHR, although Condon had not made such statements during the incident that led to the filing. Those statements, and plaintiff's resulting charges were made years before the events in question, and there is no causal connection between them and the alleged "adverse action." In fact, Condon was president of defendant when plaintiff's position was offered to another African American employee.

In short, the record is devoid of any evidence to suggest than any of defendant's actions were based on impermissible racial animus. Nor is there any evidence that any of defendant's actions were taken in retaliation for plaintiff have filed charges with the CCHR, the latest of which was filed almost 9 months prior to the events in question. Plaintiff's entire case is

premised on his problems with Hope, but both of his charges were file well before Hope began as property manager. There simply is nothing in the record to suggest a causal connection between those charges and Hope's or defendant's actions on July 27, 2004. As plaintiff himself describes it, there was a power struggle between himself and Hope over who controlled the garage. Plaintiff thought his position was on an equal footing with that of the property manager. Hope and defendant thought differently. Plaintiff lost that power struggle, and he loses again in the instant case. Defendant's motion for summary is granted.

## CONCLUSION

For the reasons discussed above, defendant's motion for summary judgment is granted.[1]

**ENTER:** July 1, 2010

_____
**Robert W. Gettleman
United States District Judge**

---

[1] Plaintiff has moved to strike defendant's L.R. 56.1 statement and certain exhibits attached thereto, as well as defendants memorandum in support. Plaintiff spends a great deal of his opposition brief attacking defendant's memorandum as "legal writing outrage" because it "relies on entirely unsupported, uncited and misrepresented fact . . .." Plaintiffs is wrong. Each of the depositions referenced in defendant's memorandum is attached as an exhibit to defendant's L.R. 56.1 statement. The memorandum properly identifies to the exhibit and page and line number. Plaintiff is also incorrect in arguing that the CCHR report finding no evidence of retaliation is inadmissible. The case on which he relies, Lewis v. City of Chicago, 590 F.3d 427, 442 (7th Cir. 2009), holds that the such administrative findings are admissible under Fed. R. Evid. 803(8)(C) and 801(D)(2), but that the court has discretion to reject the evidence if it is merely conclusory or could confuse the jury. Consequently, plaintiff's motion to strike is denied.